# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. 09-CR-20027 |
| ) | |
| **TERRILL HARRIS,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION

This case is before the court for ruling on the Motion to Suppress Evidence (#14) filed by Defendant, Terrill Harris. This court has carefully considered the evidence presented and the arguments of the parties. Following this careful and thorough consideration, Defendant's Motion (#14) is DENIED.

### BACKGROUND

On April 7, 2009, Defendant was charged in a two count indictment (#8). In Count 1, he was charged with knowingly possessing five kilograms or more of a mixture and substance containing cocaine, a Schedule II controlled substance, with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(ii). In Count 2, he was charged with knowingly carrying a firearm during and in relation to the crime of possession of five kilograms of cocaine with the intent to distribute it as charged in Count 1, in violation of 18 U.S.C. § 924(c). On September 28, 2009, a status conference was held in this case. Defendant stated that he would be filing a motion to suppress and this court set an evidentiary hearing for December 21, 2009, at 10:00 a.m.

### MOTION TO SUPPRESS

On September 30, 2009, Defendant filed a Motion to Suppress Evidence (#14). Defendant argued that all incriminating evidence should be suppressed in this case because: (1) the initial

traffic stop was invalid and in violation of the Fourth Amendment; (2) Defendant did not consent to the search of his car so the subsequent search was a violation of the Fourth Amendment; and (3) the "air sniff" of the car by the K-9 dog did not result in a positive "hit" so the subsequent search of the car was in violation of the Fourth Amendment.

On October 19, 2009, the Government filed its Response to Defendant's Motion to Suppress Evidence (#15). The Government set out the evidence it expected to present at the evidentiary hearing. The Government argued that, based upon the facts, Defendant's Motion to Suppress should be denied because: Illinois State Trooper Chris Owen had reasonable suspicion to stop Defendant for speeding; Defendant consented to the search of his vehicle or, in the alternative, the canine reaction provided Owen with probable cause to search; and, because the stop and arrest of Defendant were lawful, there was no basis to suppress Defendant's statements.

On November 3, 2009, Defendant filed a Brief in Support of Motion to Suppress Evidence (#16). Defendant argued that the stop of his vehicle was pretextual, denied that he gave Owen consent to search his vehicle, denied that the K-9 dog alerted, and denied that he was advised of his Miranda rights prior to making admissions. In addition, Defendant argued that any consent to search did not include the front passenger airbag area so that all evidence seized following that search must be suppressed. Defendant further argued that the second search of the vehicle, after Defendant was released on bond, was improper because there was no probable cause for the search and no search warrant was secured. On November 18, 2009, this court entered a text order and granted Defendant's Motion to Amend the Motion to Suppress on its Face (#17). Accordingly, Defendant was allowed to add an allegation that the search of the hidden compartments in the car was without probable cause.

An evidentiary hearing was held on December 21, 2009. The transcript of the evidentiary hearing (#19) was filed on January 13, 2010. At the hearing, the Government presented the testimony of Chris Owen. Owen testified that he joined the Illinois State Police in 2002. Owen

stated that he has been trained as a canine officer and works with a trained canine, Xocko, in providing narcotic detection assistance and patrol assistance.

Owen testified that he was on duty with Xocko on February 25, 2009, patrolling Interstate 57. Owen testified that he had a speed detection device called LIDAR. Owen testified that the LIDAR method of speed detection is more precise than radar detection. Owen stated that the LIDAR device he had that day had been tested and was working properly. Owen testified that he observed a black Lincoln Continental which appeared to be traveling faster then the posted speed limit of 65 miles per hour. Owen measured the vehicle's speed with the LIDAR device and determined that it was traveling 74 miles per hour. Owen pulled his vehicle onto the highway in preparation for a traffic stop. The video camera in his car turned on automatically approximately one minute before he activated his emergency lights. Owen testified that, after the emergency lights were activated, the black Lincoln Continental pulled over and stopped. Owen identified Defendant as the driver of the vehicle.

Portions of the videotape of the traffic stop were played at the evidentiary hearing while Owen explained what happened during the stop. The videotape showed that Defendant gave a convoluted, and relatively implausible, story regarding the reason for his travels. Owen testified that he asked Defendant for consent to search the black Lincoln Continental and Defendant gave his consent. Defendant sat in Owen's squad car while Owen walked Xocko around Defendant's vehicle. Owen testified that Xocko alerted at the front driver's side and the front passenger side of the vehicle. Owen testified that he told Defendant Xocko had alerted to the presence of illegal narcotics. Owen testified that he then conducted a probable cause search of Defendant's vehicle and his partner, Mark Holley, sat with Defendant in the squad car.

Owen testified that, during his search, he noticed a nonfactory hinge at the bottom of the glove box. Owen testified that he also saw nonfactory weld marks above the glove box towards where the air bag would typically sit. Owen stated that he could see, through a split in the metal on

the right side, what appeared to be a small motor with some wires in that area. Owen testified that, based upon his training and experience, he was "extremely suspicious" that there was a false compartment in the dash area of the vehicle. Owen testified that he retrieved a fiberoptic scope which was part of his contraband detection kit. He put the scope into the split or crack near the glove box and was able to see an air freshener in there and "the butt of a firearm, the stock of a firearm, pistol."

Owen testified that he placed Defendant under arrest and read him his Miranda rights. Owen testified that Defendant told him there was a firearm in the compartment. Owen testified that Defendant was transported to the Illinois State Police District 10 headquarters, and the vehicle was taken to that location as well. At headquarters, Owen was able to open the false compartment and retrieved a .357 caliber Rossie firearm and approximately 14 rounds of ammunition. Owen stated that there were five or six rounds of ammunition in the firearm. Defendant was again advised of his rights under Miranda and admitted to officers at headquarters that he had the handgun in the hidden compartment and that he sometimes used the hidden compartment to transport guns and marijuana.

Owen testified that the next day, February 26, 2009, Defendant was released on bond from the Douglas County jail. Owen testified that he was informed by another officer that Defendant called District 10 to attempt to retrieve property from his vehicle. Owen testified that he then reviewed the videotape of the traffic stop and specifically reviewed the canine sniff as well as Defendant's demeanor while the vehicle was being searched, which Owen stated was indicative of excessive nervousness. Owen stated that, based on his observations, he became concerned that "possibly there was additional contraband inside the vehicle." Owen testified that he decided to conduct an additional search of Defendant's vehicle. He conducted the search the morning of February 27, 2009. Owen testified that he located a false secret compartment between the rear passenger seat and the trunk of the vehicle which contained a very large quantity of cocaine. Owen

testified that he had to use a pry bar to open the compartment. After this discovery, Defendant was arrested again, was advised of his Miranda rights and made admissions regarding the possession of the cocaine in the hidden compartment. During cross examination, Owen testified that he did not consider getting a search warrant before the second search of the vehicle on February 27, 2009. Owen agreed that there was an assistant state's attorney on call to get an emergency search warrant.

After the transcript was filed, this court set a briefing schedule. On March 22, 2010, Defendant filed his Second Brief in Support of Defendant's Motion to Suppress (#20). In his Second Brief, Defendant stated that he now concedes that the initial stop was valid and that voluntary consent to search the vehicle was given by Defendant. Defendant also conceded that he was properly advised of his rights under Miranda. Defendant stated that he was contesting whether his consent extended to a search of the hidden compartment in the dash using a fiberoptic device. In addition, Defendant argued that there was an issue regarding whether Owen had consent and/or probable cause to remove the rear seat of his vehicle and examine the trunk to find and enter the secret compartment found therein. Defendant pointed out that Owen did not secure a search warrant for his additional search of the vehicle, although an assistant state's attorney and Judge may have been available.

On April 9, 2010, the Government filed its Response to Defendant's Second Brief (#21). The Government argued that the issues raised by Defendant do not warrant suppression of the evidence because Defendant's consent and the factors that gave Owen probable cause to search the interior of the vehicle also provided consent and probable cause to use the fiberoptic device and search the vehicle more thoroughly two days following its seizure.

ANALYSIS

"The Fourth Amendment prohibits unreasonable searches or seizures, and courts exclude evidence obtained through an unreasonable search or seizure." United States v. Burnside, 588 F.3d

511, 517 (7th Cir. 2009). If law enforcement agents conduct a warrantless search, "the government must show by a preponderance of the evidence that the search fell within one of the recognized exceptions to the warrant requirement." United States v. Zahursky, 580 F.3d 515, 521 (7th Cir. 2009). Under the long-recognized automobile exception to the warrant requirement, law enforcement agents may conduct a warrantless search of a vehicle "where there is probable cause to believe that [the] vehicle contains contraband or evidence of a crime." Zahursky, 580 F.3d at 521, citing Carroll v. United States, 267 U.S. 132, 153-56 (1925). The automobile exception recognizes both the inherent mobile nature of an automobile and the decreased expectation of privacy that an individual has in a car. See Zahursky, 580 F.3d at 522; United States v. Rivera, 825 F.2d 152, 158 (7th Cir. 1987).

When law enforcement agents have probable cause to search a vehicle, they "may search 'any area of the vehicle in which the evidence might be found.'" United States v. Clinton, 591 F.3d 968, 971 (7th Cir. 2010), quoting Arizona v. Gant, ___ U.S. ___, 129 S. Ct. 1710, 1721 (2009). Probable cause for a search "exists where based on a totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime may be found in a particular place.'" Zahursky, 580 F.3d at 521, quoting Illinois v. Gates, 462 U.S. 213, 238 (1983). "In determining whether there is probable cause to search, law enforcement officers may draw reasonable inferences from the facts based on their training and experience." Zahursky, 580 F.3d at 521.

After careful consideration of the evidence presented at the evidentiary hearing and the arguments of the parties, this court agrees with the Government that Defendant's Motion to Suppress Evidence (#14) must be denied. This court first notes that it found Owen's testimony to be credible and all of his actions to be reasonable based upon the circumstances. This court agrees with the Government that Owen's use of the fiberoptic scope was proper. The evidence showed that Owen was searching the vehicle based upon Defendant's consent and based upon probable cause provided by Xocko's alert. It is well settled that "[i]f probable cause justifies the search of a lawfully stopped

vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." California v. Acevedo, 500 U.S. 565, 570 (1991), quoting United States v. Ross, 456 U.S. 798, 825 (1982); see also United States v. Alexander, 573 F.3d 465, 475 (7th Cir. 2009) (during a warrantless search of a vehicle based upon probable cause, officers may look anywhere drugs or other contraband might be concealed, including containers found inside the vehicle).

In a case very similar to this one, the Seventh Circuit held that the scope of a search based upon probable cause "could extend to any part of the vehicle capable of concealing narcotics or other evidence of drug dealing, including the hidden compartment from which the officers seized the pistol (and some ammunition)." United States v. Ortiz, 84 F.3d 977, 983 (7th Cir. 1996). In Ortiz, the officers had pried open two concealed compartments in the rear area of the vehicle, finding a loaded .25 caliber Beretta pistol inside one of the compartments, and, as noted, the Seventh Circuit found the search was proper. Ortiz, 84 F.3d at 982-83. This court therefore agrees with the Government that, during a warrantless search of a vehicle based upon probable cause, officers are permitted to search hidden compartments found inside the vehicle by physical means. See Ortiz, 84 F.3d at 982-83. Therefore, it follows that the less intrusive search of the hidden container by fiberoptic device was permissible. See also United States v. Cardenas, 2008 WL 4661605, at *1-3 (W.D. La. 2008) (consent search, including use of fiberoptic viewing device, was justified where there were no limits on initial consent to search and there was no withdrawal of consent).

This court also agrees with the Government that the second search of the vehicle was proper under the circumstances here. "[I]f the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an immediate or a delayed search of the vehicle." Acevedo, 500 U.S. at 570, citing Chambers v. Maroney, 399 U.S. 42, 51-52 (1970). In this case, Owen had sufficient probable cause to search Defendant's vehicle based on Defendant's behavior during the traffic stop, Xocko's positive alert to the presence of illegal narcotics, and Defendant's eagerness to retrieve his belongings from the vehicle. The two-day delay in conducting

the more thorough search did not invalidate the search. See Rivera, 825 F.2d at 158. The Seventh Circuit's decision in Rivera involved very similar facts. In Rivera, DEA agents arrested the defendant and seized his car. Rivera, 825 F.2d at 155. The agents searched the defendant's car at the DEA garage on the date of the arrest and found three kilograms of cocaine. Rivera, 825 F.2d at 155. Three days later, agents conducted a second, more detailed warrantless search of the vehicle in which they removed carpeting and the rear seat and discovered a secret compartment containing nine more packages of cocaine. Rivera, 825 F.2d at 158. The Seventh Circuit concluded that the delay did not invalidate either search and further concluded that the scope of the second search of the car was reasonable and justified by probable cause. Rivera, 825 F.2d at 158. Accordingly, based upon the applicable case law, this court concludes that the second search of Defendant's vehicle was based upon probable cause and proper.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Suppress Evidence (#14) is DENIED.

(2) This case remains scheduled for a status conference on April 30, 2010, at 2:30 p.m.

ENTERED this 30th day of April, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE